# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS M. AVALOS, | Case No. 1:13-cv-00241-SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S COMPLAINT** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Luis M. Avalos ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act (the "Act"). 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## FACTUAL BACKGROUND

Plaintiff was born in 1964, has a sixth grade education obtained in Mexico, cannot speak English, and worked as a construction worker and laborer. (Administrative Record ("AR") 52, 61,

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge for all purposes. (Docs. 9, 10.)

78-81, 256, 290.) On May 4, 2009, Plaintiff filed application an application for DIB, and on May 7, 2009, filed an application for SSI, alleging disability beginning on August 29, 2008, due to a heart attack and hypertension. (AR 78-81, 251, 255.)

**A.    Relevant Medical Evidence**[2]

On November 10, 2009, Plaintiff was seen by Steven Stoltz, M.D., for an internal medicine evaluation. (AR 390-95.) Dr. Stoltz noted that Plaintiff was a "45-year-old, Spanish speaking, Hispanic male with a history of cardiac disease, hypertension, and hyperlipidemia." (AR 390.) Plaintiff had been admitted to the hospital on August 29, 2008, for the following diagnoses: ventricular fibrillation, status post automatic implantable cardioverter defibrillator, alcohol withdrawal, atrial fibrillation, diabetes, and a history of stroke. (AR 390.) He was discharged on September 8, 2008. (AR 391.) Plaintiff had a pacemaker implanted. (AR 391.)

Upon physical examination, Dr. Stoltz noted that Plaintiff was "well-developed, well-nourished, healthy-appearing, mildly obese male in no distress. The claimant was alert, cooperative and well-oriented in all spheres. He was breathing comfortably on room air. He was a Spanish-speaker and was accompanied by a professional Spanish interpreter." (AR 392.) Dr. Stoltz reported that Plaintiff's "[h]eart tones are of good quality. No murmurs, thrills or rubs." (AR 392.) Plaintiff "had been seen on several occasions at Community Regional Medical Center in Fresno for cardiomyopathy with vertricular fibrillation. Currently he is in normal sinus rhythm and his exam was fairly unremarkable." (AR 395.)

Based on "observation, history, review of available medical records and objective clinical findings," Dr. Stoltz opined Plaintiff

> can lift and/or carry frequently up to 10 pounds and occasionally up to 20 pounds. He has no restrictions with sitting or standing. He can walk for 60 to 90 minutes at one time without interruption and four to five hours total in an eight[-]hour workday. He does not require a cane to ambulate. He has no restrictions with use of his hands or feet. Postural activities can be done on a frequent but not continuous basis. He did not seem to have any gross impairments of hearing or vision. There are no other environmental limitations.

(AR 395.)

---

[2] Although the Court has reviewed the entire administrative record, only evidence relevant to the disputed issues will be summarized.

On November 25, 2009, State Agency physician I. Ocrant, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").[3] (AR 396-402.) Dr. Ocrant opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand, walk and/or sit six hours in an eight-hour day; had unlimited abilities to push and/or pull; could occasionally climb ramps and stairs but never climb ladders; frequently balance, stoop, kneel, crouch, and crawl; had no manipulative, visual, or communicative limitations; and should avoid concentrated exposure to hazards but had no other environmental limitations. (AR 397-99.) Dr. Ocrant noted Dr. Stoltz' opinion that Plaintiff could walk four to five hours in an eight-hour day and indicated that this finding indicated a limitation to sedentary work. (AR 402.) However, Dr. Ocrant opined that Dr. Stoltz' finding "may be overly restrictive as [Plaintiff] had normal strength and gait." (AR 402.)

**B.    Lay Testimony**

On February 8, 2010, Plaintiff completed an Adult Function Report. (AR 282-89.) Plaintiff indicated he could not sleep at night "[d]ue to severe pain." (AR 283.) Plaintiff's family would remind him "[a]t times" regarding his personal needs and grooming and to take his medicine. (AR 284.) Plaintiff would cook for himself once in a while, but most of the time his family prepared his meals. (AR 284.) Plaintiff would walk around the house if he was "feeling fine," and would spend time with his family. (AR 286.) He would go to his doctors' offices, but had no social events. (AR 286.) In response to a question requiring Plaintiff to check off abilities that were affected by his illnesses, injuries, or conditions, Plaintiff checked off that his condition affected his abilities for lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair climbing, memory, completing tasks, concentration, understanding, following instructions, and using his hands, but did not affect his abilities for seeing and getting along with others. (AR 287.)

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.*

**C.     Administrative Hearing**

The Commissioner denied Plaintiff's application for disability initially and again on reconsideration; consequently, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 82-86, 89-93, 95-99, 101-02.) On August 3, 2011, ALJ Christopher Larsen held a hearing in which Plaintiff, represented by counsel, testified through an interpreter, and vocational expert ("VE") Jose Chaparro testified. (AR 48-72.)

Plaintiff testified that he was 47 years old at the time of the hearing. (AR 52.) Plaintiff had a sixth grade education he completed in Mexico. (AR 52.) He could not speak English but could understand "[a] little bit," and could read and write in Spanish. (AR 52.) He last worked in 2008 doing "[f]ield work," and had also worked doing construction. (AR 52-53.)

The VE testified that Plaintiff's past relevant work was as a construction worker II, which was very heavy and unskilled, and as a fruit harvest worker, which was medium and unskilled. (AR 61-62.) The ALJ asked the VE whether a hypothetical person could perform Plaintiff's past relevant work if the person was the same age as Plaintiff; had the same education and work experience; could perform light physical exertion as defined in the regulations; could never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs; could frequently balance, stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to hazards. (AR 62-63.) The VE testified that such a person could not perform Plaintiff's past relevant work, but could do light, unskilled work such as housekeeping, cleaner; apple packing header; and can filling and closing machine tender. (AR 63.)

However, after the ALJ clarified that the VE should assume no English fluency, the VE testified that "the only jobs [he] could actually think of at the light level would require at least a pretty good English fluency. Beyond that, [Plaintiff] would be more realistically sedentary." (AR 65.)

**D.     The ALJ's Decision**

On September 16, 2011, the ALJ issued a decision finding Plaintiff not disabled from August 29, 2008, through the date of the decision. (AR 22-37.) The ALJ found that (1) Plaintiff had met the insured status requirements of the Act through December 31, 2008; (2) Plaintiff had

not engaged in substantial gainful activity since August 29, 2008, the alleged disability onset date; (3) Plaintiff had the following severe impairments: borderline intellectual functioning, obesity, ventricular fibrillation status post automatic defibrillator implantation and extraction, cardiomyopathy, diabetes, and status post cerebrovascular accident based on the requirements in the Code of Federal Regulations; (4) Plaintiff did not have an impairment or combination of impairments that met or equaled one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Plaintiff had the RFC to lift and carry 20 pound occasionally and 10 pounds frequently; stand, walk, and sit six hours in an eight-hour day; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; frequently balance, stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to hazards; (6) Plaintiff could not perform his past relevant work; (7) Plaintiff was 44 years old and therefore an "younger individual age 18-49" on the alleged disability onset date; (8) Plaintiff cannot communicate in English and was accordingly evaluated as a person who is illiterate in English; (9) the transferability of job skills was not an issue because Plaintiff's past relevant work was unskilled, (10) there were jobs that exist in significant numbers in the national economy that Plaintiff could perform; and (11) Plaintiff had not been under a disability, as defined in the Act, at any time from August 29, 2008, the alleged onset date, through the date of the decision.  (AR 30-37.)

**E.    The Appeals Council Decision**

Plaintiff sought review of the ALJ's decision with the Appeals Council, which was denied on December 14, 2012.  (AR 1-8.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

**F.    Plaintiff's Current Appeal**

On February 14, 2013, Plaintiff filed the current complaint before this Court seeking review of the ALJ's decision.  (Doc. 1.)  Plaintiff contends that the ALJ failed to (1) consider Plaintiff's lack of English fluency in the vocational analysis, (2) provide legally sufficient reasons to give only "some" weight to the opinion of examining physician Dr. Stoltz, and (3) give legally sufficiently reasons for finding Plaintiff's testimony not credible.  (Doc. 14.)

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not, in Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

Plaintiff contends that the ALJ erred in failing to consider Plaintiff's lack of English fluency in the hypothetical question presented to the VE to assess Plaintiff's vocational capabilities. The ALJ further erred in weighing the medical opinion evidence and providing reduced weight to the opinion of the examining physician Dr. Stoltz. Additionally, the ALJ failed to give legally sufficient reasons for finding Plaintiff's testimony not credible. (Doc. 14.)

Defendant contends that the ALJ properly relied on the VE's testimony in finding that Plaintiff had the capacity to adjust to other work at Step Five of the sequential evaluation. The ALJ properly discounted the examining opinion of Dr. Stoltz, as well as properly discounted Plaintiff's subjective complaints of disabling symptoms. (Doc. 18.)

A.     **The ALJ's Consideration of Plaintiff's English Fluency in the Vocational Analysis**

     **1.     Legal Standards**

At Step Five of the sequential evaluation, the burden shifts to the Commissioner to show that the claimant can perform other jobs that exist in the national economy. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir.2009); *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007). To meet this burden, the Commissioner "must identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite [his] identified limitations." *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir.1999) (citation and internal quotation marks omitted).

There are two ways for the Commissioner to meet this burden: "(a) by the testimony of a vocational expert, or (b) by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2." *Tackett*, 180 F.3d at 1099; *accord Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). However, "[w]hen [the Grids] do not adequately take into account [a] claimant's abilities and limitations, the Grids are to be used only as a framework, and a vocational expert must be consulted." *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002).

At this stage, the ALJ should consider the claimant's RFC and vocational factors such as age, education, and past work experience. 20 C.F.R. §§ 404.1520(f) & 416.920(f). In considering education as a vocational factor, the categories of education that are considered include literacy and the ability to communicate in English. *Id.* at 404.1564(b)(1), (b)(5); 416.964(b)(1), (b)(5). A distinction exists between an assessment of literacy and an assessment of the ability to communicate in English, and an ALJ must consider both in determining whether a claimant can perform work pursuant to the regulations. *Id.*; *see also Calderon v. Astrue*, No. 1:08-CV-01015 GSA, 2009 WL 3790008, at *9 (E.D. Cal. Nov. 10, 2009).

Illiteracy is defined as "the inability to read or write. [The Commissioner] consider[s] someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. §§ 404.1564(b)(1); 416.964(b)(1).

The Commissioner further considers a claimant's ability to communicate in English:

> Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in.

*Id.* at §§ 404.1564(b)(5); 416.964(b)(5).

### 2. The ALJ's Hypothetical to the VE Failed to Account for Plaintiff's Lack of English Fluency

In evaluating Plaintiff's RFC, the ALJ determined that Plaintiff could lift and carry 20 pound occasionally and 10 pounds frequently; stand, walk, and sit six hours in an eight-hour day; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; frequently balance, stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to hazards. (AR 32.) The ALJ further noted that Plaintiff "cannot communicate in English," and stated that Plaintiff's claim was evaluated as "a person who is illiterate in English." (AR 36.) Based on Plaintiff's RFC, the ALJ noted that the Plaintiff "cannot perform the full range of light work," but found there were a significant number of jobs Plaintiff could perform. (AR 37.) Relying on the testimony of the VE, the ALJ stated that Plaintiff could perform representative occupations of housekeeping cleaner, apple packing header, and can filling and closing machine tender, all light and unskilled. (AR 37; *see also* AR 63.)

In questioning the VE, the ALJ asked the VE to

> assume a worker of the claimant's age, education, and work experience who can perform light physical exertion as defined in the regulations, but who can never climb ladders, ropes, or scaffolds; who can occasionally climb ramps or stairs; who can frequently balance, stoop, kneel, crouch, crawl . . . [a]nd must avoid concentrated exposure to hazards.

(AR 62-63.) Based on that proposed hypothetical, the VE testified that such a person could perform light, unskilled jobs such as housekeeping, cleaner; apple packer; and can filling and closing machine tender. (AR 63.)

Plaintiff contends that both the RFC and the hypothetical the ALJ presented to the VE failed to include the relevant vocational factor of Plaintiff's lack of English fluency. (Doc. 14,

7:17-23.) Neither the RFC nor the hypothetical specifically note that Plaintiff should be considered illiterate in English. (*See* AR 37, 62-63.) Defendant contends, however, that the VE was told to assume a person with Plaintiff's education. Plaintiff testified during the hearing through an interpreter, and said he has a sixth grade education obtained in Mexico and he could not speak English. (*See* AR 50, 52.) As such, the VE was aware of Plaintiff's educational and English fluency limitations when responding to the ALJ's hypothetical, and thus incorporated Plaintiff's limitations in providing jobs that met the requirements set forth in the hypothetical. (Doc. 18, 5:3-13.) Accordingly, Defendant contends the ALJ properly relied on the VE's testimony in finding that Plaintiff could perform jobs in the national economy at Step Five. (Doc. 18, 4:20-5:13.)

Defendant's contention is belied by the VE's testimony. After providing a response to the ALJ's hypothetical, the following exchange took place:

> [VE]: And, you know, I should ask you, how much English fluency should I assume?
>
> [ALJ]: None.
>
> [VE]: None? Okay. That being the case, the only jobs actually I could think of at the light level would require at least a pretty good English fluency. Beyond that, [Plaintiff] would be more realistically sedentary.

(AR 65.) Accordingly, once the ALJ clarified the VE should assume no English fluency, he testified that such a person could not perform jobs at the light level, but would "more realistically" be able to perform sedentary jobs.

As noted above, the Commissioner bears the burden at Step Five to show that the claimant can perform other jobs that exist in the national economy. *Bray*, 554 F.3d at 1222; *Hoopai*, 499 F.3d at 1074-75. Here, the ALJ relied on the VE's testimony to find that Plaintiff could perform light, unskilled work in occupations such as a housekeeping cleaner, apple packing header, and can filling and closing machine tender. (AR 37.) However, the VE testified light level work required "at least a pretty good English fluency," and that Plaintiff would be "more realistically sedentary" because he had no English fluency. (AR 65.) As such, the ALJ erred in failing to account for Plaintiff's English proficiency in the hypothetical proposed to the VE, and

could not rely on the light work identified by the VE and cited in the ALJ's decision since it did not account for Plaintiff's English language capabilities. Based on the VE testimony, Plaintiff's lack of English fluency appears to preclude him from working at the light level jobs identified by the ALJ in his decision. Accordingly, the ALJ failed to show that there are jobs Plaintiff can perform in the national economy, and thus failed to meet his burden at Step Five.

### 3. The ALJ's Error was Not Harmless

Defendant asserts that, even if the VE's testimony is disregarded, any error made by the ALJ at Step Five is harmless because the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. pt. 404, subpt. P, app. 2, direct a finding that Plaintiff was not disabled.

As noted above, the two ways for the Commissioner to meet the burden at Step Five is through the testimony of a vocational expert or by reference to the Grids. *Tackett*, 180 F.3d at 1099; *Lockwood*, 616 F.3d at 1071. However, "[w]hen [the Grids] do not adequately take into account [a] claimant's abilities and limitations, the Grids are to be used only as a framework, and a vocational expert must be consulted." *Thomas,* 278 F.3d at 960.

The RFC indicates that Plaintiff can perform light work (AR 32 (Plaintiff can "lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk six hours, and sit six hours, in an eight-hour workday")), but with limitations (AR 32 (Plaintiff "can never climb ladders, ropes, or scaffolds; can only occasionally climb ramps and stairs; frequently balance, stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to hazards")). Further, Plaintiff was "44 years old, and therefore a 'younger individual age 18-49' under Social Security regulations, on the alleged disability onset date" of August 29, 2008. (AR 36.) Defendant asserts that because Plaintiff is a younger individual who can perform light work, the Grids direct a finding of "not disabled." (Doc. 18, 5:14-6:13.)

There are, however, exertional limitations to Plaintiff's RFC that are not accounted for in the Grids. Even though Defendant asserts that the limitations "do not significantly erode the occupational base" (Doc. 18, 6:2-3), the fact that there are limitations requires the ALJ to seek testimony by a VE setting forth that Plaintiff can perform specific jobs at specific exertional

11

levels. *See Thomas*, 278 F.3d at 960; *Bray*, 554 F.3d at 1223, n. 4. As such, Defendant cannot rely on the Grids to show that Plaintiff could perform light work and be found not disabled.

Additionally, it is not clear that Plaintiff should be considered for light work. Although the RFC indicates that Plaintiff can perform light work, based on the VE's testimony upon consideration of Plaintiff's lack of English fluency, he is "more realistically sedentary." (AR 65.) Under the Grids, a younger individual aged 45-49, who is limited to sedentary work, illiterate or unable to communicate in English, and with unskilled or no work experience would be found disabled. 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 201.17. Here, Plaintiff was "44 years old, and therefore a 'younger individual age 18-49' under Social Security regulations, on the alleged disability onset date" of August 29, 2008. (AR 36.) Plaintiff, however, turned 45 years old before the ALJ rendered his decision on September 16, 2011. (AR 22.) The ALJ evaluated Plaintiff as someone "who is illiterate in English," and found that his past relevant work was "unskilled." Accordingly, if Plaintiff is limited to sedentary work based on his lack of English fluency, he would be found to be disabled under the Grids.

Accordingly, the ALJ cannot rely on the Grids to meet his burden at Step Five to show that Plaintiff was not disabled and able to perform work in the national economy.

**B.   The ALJ's Consideration of Medical Evidence**

Plaintiff contends the ALJ erred by failing to provide legally sufficient reasons to give only "some" weight to the examining physician Dr. Stoltz. (Doc. 14, 10:19-13:12.) Defendant asserts the ALJ properly evaluated the medical evidence. (Doc. 18, 6:19-7:21.)

**1.   Legal Standard**

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating or examining physician's

opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id*. If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id*. at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin*., 574 F.3d 685, 692 (9th Cir. 2009). The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

### 2. The ALJ Properly Discounted Dr. Stoltz' Opinion

Plaintiff contends that the ALJ erred in only giving "some" weight to Dr. Stoltz' opinion and did not provide legally sufficient reasons for failing to adopt Dr. Stoltz' findings that Plaintiff could walk a total of four to five hours in an eight-hour workday. (Doc. 14, 11:8-11.)

In considering Dr. Stoltz' opinion, the ALJ found that:

> [Plaintiff] was consultatively examined by internist Steven Stoltz, M.D., in November 2009 (Exhibit 3F). Dr. Stoltz reviewed medical records and [Plaintiff] complained of headaches, fatigue, and exertional dyspnea when walking more than ¼ mile (Exhibit 3F, p. 2). Dr. Stoltz noted [Plaintiff] was well-developed, healthy-appearing, mildly obese, and was breathing comfortably on room air (Exhibit 3F, p. 4). He was 66 inches tall and weighed 205 pounds (Exhibit 3F, p. 4). His blood pressure was 130/86 and his grip strength was 60-60-45 in his right arm and 25-25-25 in the left arm (Exhibit 3F, p. 4). There was mild right eye pterygium, breath sounds were symmetric, expiratory phase was within normal limits, and there was no rhonchi or rales (Exhibit 3F, p. 4). Heart tones were of good quality; there were no murmurs, thrills, or rubs; and the PMI was in the fourth intercostals space (Exhibit 3F, p. 4). [Plaintiff] had bilateral gynecomastia and scar over the left upper chest from previous defibrillator for a pocket infection (Exhibit 3F, p. 5). All joints had normal range of motion, pulses were normal, and motor strength, reflexes, and gait were all normal (Exhibit 3F, pp. 4, 5, 6). Based on his observations, history, and review of the medical record, Dr. Stoltz concluded [Plaintiff] could lift and carry 20 pounds occasionally and 10 pounds frequently; had no restrictions in sitting or standing; could walk for 60-90 minutes at one time without interruption for a total of four or five hours in an[] eight-hour workday; did not require a cane to ambulate; had no restriction with the use of his hands or feet; could frequently perform postural activities; and did not seem to have any gross impairments in hearing or vision or any other environmental restrictions (Exhibit 3F, p. 7). I give this opinion some weight in making my decision, but I find [Plaintiff] can stand or walk for six hours total in an eight-hour workday based on the fairly normal examination.

(AR 34-35.)

Further, the ALJ gave "significant weight" to the findings of the state-agency medical consultant who concluded that Plaintiff could "lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk about six hours, and sit about six hours, in an eight-hour workday; frequently balance, stoop, kneel, crouch, and crawl; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to hazards." (AR 35; *see also* 396-402.)  The ALJ found that this opinion was "consistent with the overall record, including Dr. Stoltz' physical examination results." (AR 36.)

The ALJ may properly rely upon selected portions of a medical opinion while rejecting other parts. *See Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989). The ALJ relied upon Dr. Stoltz' findings but explained how those findings conflicted with Dr. Stoltz' ultimate opinion. The Ninth Circuit has found that when a doctor's conclusions are not consistent with his own findings, that is a specific and legitimate reason for rejecting or giving that opinion less weight. *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (per curiam) (treating doctor's conclusory opinion that claimant was disabled was properly rejected by ALJ when it was internally inconsistent and not consistent with doctor's medical reports). As such, the ALJ was entitled to reject inconsistent portions of Dr. Stoltz' opinion while relying on other parts, provided the ALJ explained his reasoning. *See Magallanes*, 881 F.2d at 753; *Tommasetti*, 533 F.3d at 1041. Here, the ALJ explained and gave reasons why he was relying on Dr. Stoltz' opinion, but at the same time rejecting portions of it. (*See* AR 34-35.) Accordingly, the ALJ properly explained his reliance and rejection of portions of Dr. Stoltz' findings.

**C.     The ALJ's Determination of Plaintiff's Credibility**

Plaintiff contends the ALJ improperly rejected his testimony concerning his impairments and failed to properly evaluate his credibility. (Doc. 14, 13:12-15:2.)  According to the Commissioner, however, the ALJ found that the record contained substantial evidence to support the ALJ's conclusions. (Doc. 18, 7:22-8:19.) In considering Plaintiff's credibility, the ALJ found that Plaintiff's "medically determinable impairments can reasonably be expected to produce his alleged symptoms, but his statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent that they are inconsistent with [the ALJ's]

assessment of his residual functional capacity."  (AR 33.)

### 1. Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection.  *Id.*  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray*, 554 F.3d at 1226-27; 20 C.F.R. §§ 404.1529, 416.929.

### 2. The ALJ Failed to Provide Clear and Convincing Reasons to Discount Plaintiff's Credibility

In considering Plaintiff's credibility, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the ALJ's RFC assessment.  (AR 33.)

In finding Plaintiff less than fully credible, the ALJ stated as follows:

> There are factors in the record that weigh against [Plaintiff's] credibility.  In a function report, he claimed that his condition affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, and use his hands (Exhibit 7E, p. 6).  He marked every box, except for seeing and getting along with others (Exhibit 7E,

15

> p. 6). He was very general in his complaints and there does not appear to be sufficient objective evidence of such extensive restrictions.

(AR 33.) As such, the reason stated by the ALJ to discount Plaintiff's credibility was because the medical records did not support Plaintiff's contentions in a function report regarding the extent of his restrictions.

When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991)*;* SSR 96-7.[4] Moreover, it is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*, 947 F.2d at 345-346. Here, the ALJ made only general findings but failed to articulate specific, clear, and convincing reasons to find Plaintiff less than fully credible. *See Vasquez*, 572 F.3d at 591-92.

Defendant's opposition brief provides a discussion of additional reasons that may impact Plaintiff's credibility, including that Plaintiff only received conservative treatment. (Doc. 18, 8:3-15.) "The ALJ is permitted to consider lack of treatment in his credibility determination." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, this reason was not articulated in the ALJ's decision. While the Court can draw reasonable inferences from the ALJ's opinion, *Magallanes*, 881 F.2d at 755, the Court cannot consider Defendant's post hoc rationalizations. The Ninth Circuit has repeatedly emphasized that the "bedrock principle of administrative law" is that a "reviewing court can evaluate an agency's decision only on the grounds articulated by the agency." *Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court is "constrained to review the reasons the ALJ asserts."). An agency's decision cannot be affirmed on the ground that the agency did not invoke in making its decision. *Pinto v. Massanari,* 249 F.3d 840, 847-48 (9th Cir. 2001).

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding precedent upon ALJs. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 692 n.2 (9th Cir. 1999).

**D.      Remand is Warranted**

As a general rule, remand is warranted where additional administrative proceedings could remedy the defects in the Commissioner's decision.  *See Harmon v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).  In this case, remand is appropriate for renewed consideration of the impact of Plaintiff's lack of English fluency on his ability to do work, and of Plaintiff's credibility.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Luis M. Avalos, and against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **February 27, 2014**                             **/s/ Sheila K. Oberto**
                                                          UNITED STATES MAGISTRATE JUDGE